UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PATRICK LOWDEN and CHRISTI LOWDEN,

        Plaintiffs,

v.

MAGGIE MILLER-STOUT, et al.,

        Defendants.

CASE NO. C08-5365BHS

ORDER TO SHOW CAUSE

This matter comes before the Court on review of the record. The Court has considered the Report and Recommendation of the Honorable Karen L. Strombom, United States Magistrate Judge (Dkt. 50), Plaintiff's Objections to the Report and Recommendation (Dkt. 51), Defendants' Response to Plaintiffs' Objections (Dkt. 56), and the remainder of the record, and hereby orders the parties to show cause as stated herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**A.  Extended Family Visits**

In Washington, a prisoner can qualify for an Extended Family Visit ("EFV") under certain conditions. *See* Washington Department of Correction ("DOC") Policy 590.100.

> In February 13, 1995, [DOC] 590.100 was revised. The impetus for the new and more stringent revised directive was a serious incident at another correctional facility during an extended family visit. The incident occurred at the Clallam Bay Corrections Center during a family visit on January 7, 1995. The inmate involved held his spouse at knife point during an extended family visit, attacked and stabbed her, and held her hostage. The inmate was shot during the incident.

ORDER - 1

As a result of the Clallam Bay incident, members of the Washington Legislature during the 1995 session introduced a measure that would have completely precluded extended family visitation in Washington prisons. However, instead of passing such a law, the Washington Legislature passed, and the Governor signed, House Bill 2010, containing a provision that required the Department of Corrections to develop a uniform policy governing "the privilege of extended family visitation." See RCW 72.09.490.

As a result of House Bill 2010, the Division of Prisons revised the directive governing extended family visits, [DOC] 590.100. The revised directive became effective February 13, 1995. As revised, DOP Directive 590.100 provides that extended family visits for eligible offenders and their immediate families must be approved by the Superintendent, who has the authority to approve, deny, suspend, or terminate visits. DOP 590.100 ("If it is determined there is a reason to believe that an offender, although he/she meets all other eligibility requirements, is a danger to him/herself, the visitor(s), or to the orderly operation of the program, the Superintendent may exclude the offender from the program.").

The directive further eliminates "maximum, close custody, and death row offenders" from participating in the program, and restricts extended family visits in a number of other categories. The directive includes a restriction that "[o]ffenders may be excluded from participation if they have a documented history of domestic violence against any person." Additionally, the directive provides that only those spouses who were legally married to the offenders prior to incarceration for the current crime of conviction are eligible for extended family visitation. Id.

On February 24, 1995, Tom Rolfs, Director of the Division of Prisons, issued and circulated the new EFV directive as well as a policy statement governing the implementation of the new EFV directive. In the policy statement, Rolfs expressly recognized the extensiveness of the directive's significant revisions and encouraged the superintendents to take the necessary steps to ensure that the revised directive be implemented "with the sensitivity and necessity of its contents in mind." The policy statement provided two guidelines for implementing the newly revised directive.

The first guideline requires the Prison Superintendents to review each inmate currently approved for participation in the EFV program pursuant to the pre-revision directive to determine if he/she meets the new criteria. It also allows the Superintendent to disapprove any inmate currently participating who failed to meet the revised directive's provisions.

The second guideline allows the Superintendents to make one-time exceptions for inmates who do not meet the revised directive's requirements. Specifically, this "grandfathering" provision provides the Superintendents with the discretion to approve inmates who had (1) either already been participating in the program, or had made application to the program prior to January 10, 1995, and (2) were determined not to present safety or security concerns for the program or participants. The

1    "grandfathering" clause does not grant the superintendents discretion to
     consider any other inmate for participation in the program.

*Daniel v. Rolfs*, 29 F. Supp. 2d 1184, 1185-86 (E.D. Wash. 1999).

**B.     Plaintiffs' Requests for an EFV**

Patrick Lowden has been incarcerated since March 11, 1994. Dkt. 41 at 1. Mr. Lowden has participated in the EFV program with his parents and siblings for a number of years. *See* Dkt. 40 at 1-7.

Christi Lowden is a free person. *Id*. at 7. The Lowdens were married on April 6, 2006. Dkt. 44 at 26. On September 19, 2007, Patrick Lowden applied for participation in the EFV program with his wife pursuant to DOC. Dkt. 1-3 at 9. On September 19, 2007, the DOC denied Patrick Lowden's EFV request because he submitted his request after January 10, 1995, and he was married after his incarceration. *Id*.

## II. DISCUSSION

**A.     Standard**

The district court "shall make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). The district court "may also receive further evidence" on the issues presented. *Id*.

**B.     Equal Protection**

Mr. Lowden objects to the portion of Judge Strombom's Report and Recommendation regarding the allegation that Defendants have deprived him of his Fourteenth Amendment right to equal protection of the law. The right to equal protection of the law survives incarceration. *See, e.g., Baumann v. Arizona Dep't of Corrections*, 754 F.2d 841 (9th Cir. 1985). If a plaintiff does not allege a violation of a fundamental right or the existence of a suspect classification, prison officials need only show that their policies bear a rational relation to a legitimate penological interest in order to satisfy the equal protection clause. *See Turner v. Safley*, 482 U.S. 78, 89-90 (1987); *Coakley v. Murphy*, 884 F.2d 1218, 1221-22 (9th Cir. 1989).

ORDER - 3

It has long been held that prisoners do not retain the right to extended family visits because such visits are inconsistent with the principles of incarceration and isolation from society. *See Toussaint v. McCarthy*, 801 F.2d 1080 (9th Cir. 1986), *cert. denied* 481 U.S. 1069 (1987). Moreover, prisoners are not a suspect class. *Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir. 1998). Therefore, in this case, Defendants need only show that DOC 590.100 bears a rational relation to a legitimate penological interest in order to overcome Plaintiffs' claim that it infringes their Constitutional right to equal protection of the law.

On its face, DOC 590.100 provides two classifications of individuals as follows: (1) those that were married post conviction but submitted EFV application prior to January 10, 1995 and (2) those that were married post conviction and submitted EFV applications after January 10, 1995. Plaintiffs have shown that the state unequally treats inmates depending upon the date on which an inmate submits his EFV application. While unequal treatment is not necessarily unconstitutional, it does require the government to respond with a legitimate reason for such treatment. *See supra*. On the record before the Court, Defendants have failed to show a legitimate penological interest for the distinguishing date of January 10, 1995.

In *Daniel*, it was unnecessary for the court to address this issue. The court did, however, express its opinion of the January 10, 1995 date as follows:

> Defendants have not explained what penological purpose, in their judgment, is furthered by allowing those inmates who had submitted their applications by a certain date to be considered for participation even if they did not satisfy the revised directive's requirements while precluding from consideration those inmates who applied after that date. Clearly, an inmate who submitted an application on January 10, 1995 cannot be considered to present less of a safety threat to inmates, staff and visitors than an inmate who submitted an application on January 11, 1995. Therefore, unlike differentiating between inmates based on their "track-record" of good behavior or lack thereof, unequal treatment based on date of submission of the EFV application does not further the prisons' goal of minimizing the security and safety risks attendant with the EFV program.
>
> The court *sua sponte* has twice reserved ruling on this issue and has directed the Defendants to provide their reasons for treating inmates differently based on the date on which an inmate submitted his application. (See Ct. Rec. 53; Ct. Rec 58 (directing briefing limited specifically to the "rationale for implementing an exception to DOP 590.100 which, on its

ORDER - 4

> face, provides for treating inmates married post-incarceration who had
> submitted their applications for participation in the Extended Family
> Visitation program prior to January 10, 1995 differently from inmates
> married post-incarceration who had not submitted their applications by that
> date")). Nonetheless, despite having now had three opportunities to explain
> the penalogical interests which are believed to be advanced by this unequal
> treatment of inmates, Defendants have failed to provide any explanation.
>
> Further, rather than providing a rational explanation for the disparate
> treatment of inmates as directed by the court, Defendants have instead
> explained in detail why the effective cut-off date of the grandfathering
> clause is January 10, 1995. Surely, Defendants do not believe that using a
> nonarbitrary date to classify inmates, who are otherwise similarly situated,
> justifies arbitrary disparate treatment of those two classes of inmates.
> Indeed, the right to equal protection would be a hollow right if that is all
> that is required to satisfy even rational basis review.

*Daniel*, 29 F. Supp. 2d at 1192. While the Court will not express either agreement or disagreement with the *Daniel* court, this rationale is provided only to direct the parties' attention to the issue currently before the Court.

Therefore, the parties are ordered to show cause, if any they have, regarding a legitimate penological reason for the disparate treatment of these two classes of inmates under DOC 590.100.

**C,    Other Defenses**

Defendants also assert the following defenses: (1) Plaintiffs have failed to allege personal participation on behalf of the named Defendants; (2) Defendants are immune from suit under the Eleventh Amendment; and (3) Defendants are entitled to qualified immunity. Dkt. 3 at 5-9. Plaintiffs have made a claim for declaratory judgment that DOC 590.100 violates their Fourteenth Amendment right to equal protection of the law. Dkt. 1-3 at 12. In any response to this order, Defendants may also show how these asserted defenses may apply to Plaintiffs' request for declaratory relief.

### III. ORDER

Therefore, it is hereby

**ORDERED** that the parties may **SHOW CAUSE**, if any they have, regarding a legitimate penological reason for the disparate treatment of inmates under DOC 590.100.

A party may respond to this order in a brief no longer than 10 pages, no later than February 20, 2009.

DATED this 30th day of January, 2009.

*(signature)*

BENJAMIN H. SETTLE
United States District Judge

ORDER - 6