UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PATRICK LOWDEN and CHRISTI
LOWDEN,

           Plaintiffs,

    v.

MAGGIE MILLER-STOUT, et al.,

           Defendants.

CASE NO. C08-5365BHS

ORDER ADOPTING THE
REPORT AND
RECOMMENDATION

This matter comes before the Court on the Report and Recommendation of the

Honorable Karen L. Strombom, United States Magistrate Judge (Dkt. 50), Plaintiffs'

Objections to the Report and Recommendation (Dkt. 51), Defendants' Response to

Plaintiffs' Objections (Dkt. 56), the Court's Order to Show Cause (Dkt. 57), and the

remainder of the record. The Court hereby adopts the Report and Recommendation as

stated herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**A.**    **Extended Family Visits**

In Washington, a prisoner can qualify for an Extended Family Visit ("EFV") under

certain conditions. *See* Washington Department of Correction ("DOC") Policy 590.100.

The history of this policy is explained as follows:

In February 13, 1995, [DOC] 590.100 was revised. The impetus for the new and more stringent revised directive was a serious incident at another correctional facility during an extended family visit. The incident occurred at the Clallam Bay Corrections Center during a family visit on January 7, 1995. The inmate involved held his spouse at knife point during an extended family visit, attacked and stabbed her, and held her hostage. The inmate was shot during the incident.

As a result of the Clallam Bay incident, members of the Washington Legislature during the 1995 session introduced a measure that would have completely precluded extended family visitation in Washington prisons. However, instead of passing such a law, the Washington Legislature passed, and the Governor signed, House Bill 2010, containing a provision that required the Department of Corrections to develop a uniform policy governing "the privilege of extended family visitation." *See* RCW 72.09.490.

As a result of House Bill 2010, the Division of Prisons revised the directive governing extended family visits, [DOC] 590.100. The revised directive became effective February 13, 1995. As revised, [DOC] Directive 590.100 provides that extended family visits for eligible offenders and their immediate families must be approved by the Superintendent, who has the authority to approve, deny, suspend, or terminate visits. [DOC] 590.100 ("If it is determined there is a reason to believe that an offender, although he/she meets all other eligibility requirements, is a danger to him/herself, the visitor(s), or to the orderly operation of the program, the Superintendent may exclude the offender from the program.").

The directive further eliminates "maximum, close custody, and death row offenders" from participating in the program, and restricts extended family visits in a number of other categories. The directive includes a restriction that "[o]ffenders may be excluded from participation if they have a documented history of domestic violence against any person." Additionally, the directive provides that only those spouses who were legally married to the offenders prior to incarceration for the current crime of conviction are eligible for extended family visitation. Id.

On February 24, 1995, Tom Rolfs, Director of the Division of Prisons, issued and circulated the new EFV directive as well as a policy statement governing the implementation of the new EFV directive. In the policy statement, Rolfs expressly recognized the extensiveness of the directive's significant revisions and encouraged the superintendents to take the necessary steps to ensure that the revised directive be implemented "with the sensitivity and necessity of its contents in mind." The policy statement provided two guidelines for implementing the newly revised directive.

The first guideline requires the Prison Superintendents to review each inmate currently approved for participation in the EFV program pursuant to the pre-revision directive to determine if he/she meets the new criteria. It also allows the Superintendent to disapprove any inmate currently participating who failed to meet the revised directive's provisions.

The second guideline allows the Superintendents to make one-time exceptions for inmates who do not meet the revised directive's requirements. Specifically, this "grandfathering" provision provides the Superintendents with the discretion to approve inmates who had (1) either already been participating in the program, or had made application to the program prior to January 10, 1995, and (2) were determined not to present safety or security concerns for the program or participants. The "grandfathering" clause does not grant the superintendents discretion to consider any other inmate for participation in the program.

*Daniel v. Rolfs*, 29 F. Supp. 2d 1184, 1185-86 (E.D. Wash. 1998). It is important to note that, when the *Daniel* court addressed the constitutionality of this policy, the criteria of the grandfathering provision were that the inmate either had made application to the program or had already been participating in the program before January 10, 1995.

The current grandfathering provision reads as follows:

Offenders who made application **and** were participating in the EFV Program prior to January 10, 1995, may be allowed to continue participation based on the Superintendent's review. Offenders who were grandfathered into the program and lose custody, must reapply and meet current application criteria. This also applies to parole revocations, CCI violators and re-incarcerated offenders. Grandfathering is not allowed for remarriages following a divorce unless authorized by the Prisons Deputy Secretary.

DOC Policy 590.100, Directive § V(E)(1) (emphasis added). The current provision regarding marriages states that a spouse "[m]ust have been legally married to the offender prior to conviction and any concurrently or consecutively served conviction." *Id.*, § V(C)(1).

**B.      Plaintiffs' Requests for an EFV**

Patrick Lowden has been incarcerated since March 11, 1994. Dkt. 41 at 1. Mr. Lowden has participated in the EFV program with his parents and siblings for a number of years. *See* Dkt. 40 at 1-7.

Christi Lowden is a free person. *Id.* at 7. The Lowdens were married on April 6, 2006. Dkt. 44 at 26. On September 18, 2007, Mr. Lowden applied for participation in the EFV program with his wife pursuant to Policy 590.100. Dkt. 1-3 at 9. On September 19, 2007, the DOC denied Mr. Lowden's EFV request because he submitted his request after January 10, 1995, and he was married after his incarceration. *Id.*

**C.    The Current Proceedings**

On May 15, 2008, Plaintiffs filed a civil rights complaint in the Superior Court of the State of Washington in and for the County of Thurston. Dkt. 1-3 at 7-13. Plaintiffs claim that Defendants' denial of their EFV application is a violation of their right to equal protection of the law under the Fourteenth Amendment. *Id*. at 12-13. On June 6, 2008, Defendants removed the action to this Court. Dkt. 1.

On June 12, 2008, Defendants filed a Motion to Dismiss arguing that Plaintiffs have no constitutional right to participate in the EFV program under DOC Policy 590.100. Dkt. 3. On August 30, 2008, Judge Strombom renoted the motion as a motion for summary judgment and allowed both parties to submit additional briefing. Dkt. 35.

On December 12, 2008, Judge Strombom issued her Report and Recommendation. Dkt. 50. Judge Strombom recommended that the Court should grant Defendants' motion for summary judgment because (1) the "grandfathering provision" did not violate Plaintiffs' right to equal protection, (2) Plaintiffs were not eligible for the "grandfathering provision," and (3) Defendant Vail was entitled to summary judgment for lack of personal participation. *Id*. at 5-12.

On January 5, 2009, Plaintiffs filed objections to the Report and Recommendation. Dkt. 51. Plaintiffs specifically objected to Judge Strombom's recommendation that Defendants had not violated Plaintiffs' rights to equal protection (*id*. at 5) and argued that Defendants had not put forth a legitimate penological interest for either DOC Policy 590.100 or the "grandfathering provision" of the policy (*Id*. at 8). On January 16, 2009, Defendants responded. Dkt. 56. On February 2, 2009, Plaintiffs replied and requested that the Court reject the Report and Recommendation because of Planitiffs' "class of one" claim and because the policy is unconstitutional. Dkt. 61 at 3-5.

On January 30, 2009, the Court requested additional briefing by ordering the parties to show cause "regarding a legitimate penological reason for the disparate treatment of inmates under DOC 590.100." Dkt. 57 at 3, 6. On February 20, 2009,

Defendants responded (Dkt. 62) and attached the Declaration of Eldon Vail, the Secretary of the DOC (Dkt. 62-2).

## II. DISCUSSION

### A. Standard

The district court "shall make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). The district court "may also receive further evidence" on the issues presented. *Id.*

### B. Equal Protection

Plaintiffs argue that DOC Policy violates their rights to equal protection and that Judge Strombom erred in finding that Plaintiffs had failed to state a constitutional violation. For the reasons stated below, the Court finds that Judge Strombom did not err in finding that Plaintiffs have failed to state a constitutional violation of equal protection of the law. The Court will also address Plaintiffs' arguments regarding "the constitutionality of distinguishing between prisoners who were married before or after 'conviction' . . . ." Dkt. 51 at 9.

The Supreme Court has stated that:

> The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.

*Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (citations and quotation marks omitted). The right to equal protection of the law survives incarceration. *See, e.g., Baumann v. Arizona Dep't of Corrections*, 754 F.2d 841 (9th Cir. 1985).

To succeed on a claim of equal protection, a plaintiff must prove that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564. This analysis consist of three questions: (1) what are the law's classifications, (2) what is the

appropriate level of scrutiny, and (3) does the government action meet the level of scrutiny? *See* E. Chemerinsky, Constitutional Law § 9.1, pgs. 643-48 (2nd ed. 2002).

### 1. DOC Policy 590.100's Classifications

"The first step in equal protection analysis is to identify the [defendants'] classification of groups." *Country Classic Dairies, Inc. v. State of Montana, Dep't of Commerce Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988). "To accomplish this, a plaintiff can show that the law is applied in a discriminatory manner or imposes different burdens on different classes of people." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995). The plaintiff must show that he is (1) similarly situated and (2) disparately treated. *See Olech, supra*.

### a. Similarly Situated

The Equal Protection Clause denies to "states the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute." *Reed v. Reed*, 404 U.S. 71, 75-76 (1971). In other words, an individual's right to equal protection of the law may be violated "[o]nly when a governmental unit adopts a rule that has a special impact on less than all the persons subject to its jurisdiction . . . ." *New York City Transit Authority v. Beazer*, 440 U.S. 568, 587-88 (1979).

In this case, DOC Policy 590.100 is the adopted rule that applies to all inmates under DOC's control. Mr. Lowden is an inmate under DOC's control. Therefore, Mr. Lowden has shown that he is similarly situated to all persons subject to the DOC's jurisdiction.

### b. Disparate Treatment

It is uncontested that DOC Policy 590.100 separates inmates according to (1) whether an inmate meets the criteria of the grandfathering provision and (2) whether a spouse meets the criteria of the marriage provision. *See supra*. Therefore, Plaintiffs have

shown that DOC Policy 590.100 disparately treats inmates under its control based on these provisions.

It should be noted that the Court was concerned, as was the *Daniel* court, that inmates were classified based solely on the date of his or her application for participation in the program. Dkt. 57; *see also Daniel*, 29 F. Supp. 2d at 1189-92. The basic concern was that inmates who had been participating in the program had shown a proven "track record" of safety and could reasonably be grandfathered into a program that created serious safety issues whereas inmates who merely applied the day before the cutoff date had no proven "track record" of safety but were still allowed to be "grandfathered" into this admittedly unsafe program. The current grandfathering provision, however, states that inmates must have applied for and participated in the EFV program prior to January 10, 1995. *See supra*. Thus, Defendants are not directed to classify inmates based on the safety threat an inmate may pose because of the date that he or she submitted his application to participate in the EFV program.

Plaintiffs argue that the DOC arbitrarily applies the term "conviction" in the spouse provision. Dkt. 51 at 5; Dkt. 61 at 2-3. Plaintiffs have provided evidence that an inmate was allowed to submit his application for the superintendent's review even though the inmate was married after his conviction. *See* Dkt. 44 at 22, 24. Evidently the inmate was married before he was sentenced but after he was convicted. *Id*. The DOC admitted that this was contrary to DOC's Policy, but approved the application. *Id*. at 24.

Defendants argue that "the DOC may consider granting a particular policy exception without undermining the proper application of the policy as to the Plaintiffs in the case at bar." Dkt. 27 at 2-3. Arbitrary application of the law, however, is the essence of equal protection. *See supra*. In this case, the issue is not whether Defendants may grant exceptions to some but not others without legitimate penological interests but that Plaintiffs have no adequate remedy at law if the Court were to declare that this application of DOC Policy 590.100 was in violation of the equal protection clause. For

example, if the Court were to grant injunctive relief such that the DOC must allow inmates to submit EFV application for the superintendent's review if the inmate was married after conviction but before sentencing, Plaintiffs would still not qualify to have their application reviewed by the superintendent under the spouse provision of DOC Policy 590.100. Therefore, for the purposes of this case, this issue is moot.

### 2. Level of Scrutiny

The Court adopts Judge Strombom's finding that Plaintiffs have failed to allege the violation of a fundamental right or that they are members of a suspect class and that the appropriate level of scrutiny for DOC Policy 590.100 is rational basis review. Dkt. 50.

### 3. Legitimate Penological Interest

The Court adopts Judge Strombom's finding that Defendants have advanced legitimate penological interests for both the grandfathering clause and the spouse provision of DOC Policy 590.100. Dkt. 50.

## C. Conclusion

The Court overrules Plaintiffs' objections to Judge Strombom's Report and Recommendation. Dkts. 51 and 61. Therefore, the Court adopts the Report and Recommendation as stated herein and Defendants' Motion for Summary Judgment is granted because Plaintiffs have failed to allege a constitutional violation under the equal protection clause of the Fourteenth Amendment. Plaintiffs' Cross-Motion for Summary Judgment (Dkt. 55) and Motion for Extension of Time (Dkt. 58) are stricken as moot.

## III. ORDER

Therefore, it is hereby

**ORDERED** that Plaintiffs' Objections (Dkts. 51 and 61) are **OVERRULED** and the Report and Recommendation (Dkt. 50) is **ADOPTED** as stated herein. Defendants' Motion for Summary Judgment is **GRANTED** and this action is **DISMISSED**.

DATED this 2nd day of March, 2009.


_____
BENJAMIN H. SETTLE
United States District Judge